1   GLENN D. POMERANTZ (SBN 112503)
    *Glenn.Pomerantz@mto.com*
2   BART H. WILLIAMS (SBN 134009)
    *Bart.Williams@mto.com*
3   KELLY M. KLAUS (SBN 161091)
    *Kelly.Klaus@mto.com*
4   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue, Thirty-Fifth Floor
5   Los Angeles, CA 90071-1560
    Tel: (213) 683-9100; Fax: (213) 687-3702
6
7   ROBERT H. ROTSTEIN (SBN 72452)
    *rxr@msk.com*
8   ERIC J. GERMAN (SBN 224557)
    *ejg@msk.com*
    BETSY A. ZEDEK (SBN 241653)
9   *baz@msk.com*
    MITCHELL SILBERBERG & KNUPP LLP
10  11377 West Olympic Boulevard
    Los Angeles, California 90064-1683
11  Tel: (310) 312-2000; Fax: (310) 312-3100

12  GREGORY P. GOECKNER (SBN 103693)
    gregory_goeckner@mpaa.org
13  DANIEL E. ROBBINS (SBN 156934)
    dan_robbins@mpaa.org
14  15301 Ventura Boulevard, Building E
    Sherman Oaks, California 91403-3102
15  Tel: (818) 995-6600; Fax: (818) 285-4403

16  Attorneys for Plaintiffs

17              UNITED STATES DISTRICT COURT

18              CENTRAL DISTRICT OF CALIFORNIA

19              WESTERN DIVISION

    **CV08-06412** SJO AJWx

20  UNIVERSAL CITY STUDIOS            CASE NO.
    PRODUCTIONS LLLP, UNIVERSAL
21  CITY STUDIOS LLLP, PARAMOUNT      **COMPLAINT FOR VIOLATION OF**
    PICTURES CORPORATION,             **DIGITAL MILLENNIUM**
22  TWENTIETH CENTURY FOX FILM        **COPYRIGHT ACT, 17 U.S.C.**
    CORPORATION, SONY PICTURES        **§§ 1201, *ET SEQ.* AND FOR**
23  TELEVISION INC., COLUMBIA         **BREACH OF CONTRACT**
    PICTURES INDUSTRIES, INC., SONY
24  PICTURES ENTERTAINMENT INC.,
    DISNEY ENTERPRISES, INC., WALT
25  DISNEY PICTURES and WARNER
    BROS. ENTERTAINMENT INC.,
26
27          Plaintiffs,

28

                                              COMPLAINT

vs.

REALNETWORKS, INC. and
REALNETWORKS HOME
ENTERTAINMENT, INC.,

Defendants.

This Court has original subject matter jurisdiction over the first cause of action pleaded herein pursuant to 28 U.S.C. §§ 1331 and 1338(a), and the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et seq.* (the "DMCA"); and supplemental jurisdiction over the second cause of action pleaded herein pursuant to 28 U.S.C. § 1367. Plaintiffs Universal City Studios Productions LLLP, Universal City Studios LLLP, Paramount Pictures Corporation, Twentieth Century Fox Film Corporation, Sony Pictures Television Inc., Columbia Pictures Industries, Inc., Sony Pictures Entertainment Inc., Disney Enterprises, Inc., Walt Disney Pictures and Warner Bros. Entertainment Inc. (collectively, "Plaintiffs"), by their attorneys, for their complaint against RealNetworks, Inc. ("RealNetworks") and RealNetworks Home Entertainment, Inc. ("RealNetworks Home Entertainment") (jointly, "Real" or "Defendants"), allege, on personal knowledge as to themselves and information and belief as to others, as follows:

### NATURE OF THE ACTION

1.     Real has announced its intention to commence trafficking in a software product called "RealDVD" that by design bypasses technological measures that protect against access to and copying of movies from digital versatile discs ("DVDs"). As anyone who has ever watched a popular movie on a DVD knows from the opening message, copying the content on the DVD is strictly prohibited. RealDVD circumvents the technological measures that help to enforce this prohibition.

2.     Real admits that what RealDVD is doing "has been done illegally for awhile" with other software products, a long line of which have been shut down by the federal courts. Real, however, claims that RealDVD differs from its predecessors, and that when RealDVD circumvents the DVD protection measures, it is "legal" and "100% legit." There is nothing legal or legitimate about it. Real unlawfully makes and sells a product that circumvents the DVD protection

- 1 -

measures and makes playable copies of protected content onto computer hard drives.

3.     Plaintiffs own and/or control copyrights in many of the most successful and critically acclaimed movies and recorded television programs released in the United States and throughout the world, and they and their affiliates and licensees are among the leading producers and distributors of such motion pictures content in the DVD format. Plaintiffs have invested billions of dollars creating their content and distributing it to consumers. Each Plaintiff studio was unwilling to release its content on DVD until technological measures were adopted to safeguard that content from access and copying. RealDVD places Plaintiffs and their businesses at risk of immediate and widespread harm. For the low price of $29.99, RealDVD can be used to build a hard-drive library of complete copies of motion picture content on DVDs, including from DVDs borrowed from friends or rented (at a fraction of the purchase price) from NetFlix, Blockbuster or other rental services. The misuse of Plaintiffs' content is of no concern to Real, which pockets $29.99 for every base product it sells – and an extra $19.99 for each additional copy of the software that will allow copied DVD content to be played on additional hard drives. It is small wonder, then, that Real's CEO, Rob Glaser, anticipates his product's illicit use with a shrug and a knowing wink: "If you want to steal, we remind you what the rules are and we discourage you from doing it, but we're not your nanny."

4.     Real was able to design RealDVD to circumvent the DVD protection technology by misusing a limited license it obtained to make authorized DVD products. Specifically, in August 2007, RealNetworks obtained a license from the organization that licenses the DVD protection technology, the DVD Copy Control Association ("DVD-CCA") (the "DVD-CCA License Agreement"). The DVD-CCA License Agreement authorized Real to make DVD *player* products. Real, however, used the technology it obtained under the DVD-CCA License Agreement

to develop RealDVD, a DVD *copying* product that performs the completely unauthorized function of circumventing CSS's access- and copy-controls to make digital-to-digital playable copies from DVDs to computer hard drives. Real's misuse of the DVD protection technology was not only unauthorized but was prohibited by the DVD-CCA license agreement.

5. Plaintiffs are entitled to immediate relief from Real's flagrant violation of their rights. RealDVD's assault on the market for DVDs is obvious: the ability to use RealDVD to "rent (or borrow), rip, and return" motion picture content released on DVD fundamentally changes the economic equation of buying DVDs. For example, why pay $18.50 for a DVD if the same content can be copied permanently and perfectly for the two dollars (or less) it costs to rent the movie? For that matter, why pay $3.25 to "rent and rip" a movie if it can be borrowed from a friend or acquaintance for free, copied with RealDVD and then returned?

6. The harm that RealDVD threatens to inflict is hardly limited to the sale and rental of DVDs. RealDVD also poses an immediate threat to significant alternative means whereby Plaintiffs distribute content in digital format to consumers. Plaintiffs currently offer their content through video-on-demand channels, Internet download services (*e.g.*, Amazon and iTunes), "Digital Download" DVDs (premium DVD packages that include a digital copy suitable for download to a personal computer or portable device) and other channels. Plaintiffs are actively pursuing and developing – and taking the associated risks of investing money, time and technology in – these and other digital distribution channels. RealDVD, which has incurred none of the risks and made none of the investments in these businesses, threatens to undermine all of these present and potential channels, at significant cost to Plaintiffs and their business partners.

7. The fact that Real is the entity trafficking in RealDVD greatly increases the threat to Plaintiffs' business. Real is no minor player in the information technology sector. Real itself estimates that its products (*e.g.*, the

RealPlayer) reside on millions of personal computers in the United States and Real enjoys extensive brand recognition. Real plainly has the capability, through these other Internet-connected products, to "blast" electronic messages to its millions of users in an attempt to market its new RealDVD product. Moreover, Real styles itself as a maker and distributor of lawful products, not as a renegade "hacker." By promoting RealDVD as completely legal and legitimate, Real conveys the false impression that conduct that consumers have long understood to be wrong is now legal. This misleading promotion threatens to drive up early and immediate adoption of RealDVD by millions of end-users, each of whom will have downloaded a copy of RealDVD that can be used to evade DVD protection measures and allow for unlawful copying on an enormous scale.

8. Real's conduct will cause grave and irreparable harm to Plaintiffs should it be allowed to continue unabated. Plaintiffs bring this action to stop that harm and protect their rights.

## THE PARTIES

9. Plaintiff Universal City Studios Productions LLLP ("Universal City Studios Productions") is a limited liability limited partnership duly organized under the laws of the State of Delaware with its principal place of business located in Universal City, California.

10. Plaintiff Universal City Studios LLLP ("Universal City Studios") is a limited liability limited partnership duly organized under the laws of the State of Delaware with its principal place of business located in Universal City, California.

11. Plaintiff Paramount Pictures Corporation ("Paramount") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Los Angeles, California.

12. Plaintiff Twentieth Century Fox Film Corporation ("Fox") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Los Angeles, California.

COMPLAINT

13.    Plaintiff Sony Pictures Television Inc. ("Columbia TriStar") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Culver City, California.

14.    Plaintiff Columbia Pictures Industries, Inc. ("Columbia Pictures") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Culver City, California.

15.    Plaintiff Sony Pictures Entertainment Inc. ("Sony Pictures") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Culver City, California.

16.    Plaintiff Disney Enterprises, Inc. ("DEI") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Burbank, California.

17.    Plaintiff Walt Disney Pictures ("WDP") is a corporation duly incorporated under the laws of the State of California with its principal place of business located in Burbank, California.

18.    Plaintiff Warner Bros. Entertainment Inc. ("Warner Bros.") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business located in Burbank, California.

19.    On information and belief, Defendant RealNetworks, Inc. is incorporated under the laws of the State of Washington and has its principal place of business at 2601 Elliott Avenue, Suite 1000, Seattle, Washington 98121.

20.    On information and belief, Defendant RealNetworks Home Entertainment, Inc. is incorporated under the laws of the State of Delaware and has its principal place of business at 2601 Elliott Avenue, Suite 1000, Seattle, Washington 98121.

## JURISDICTION AND VENUE

21.    The Court has subject matter jurisdiction over the federal law cause of action pleaded herein pursuant to 28 U.S.C. §§ 1331 (federal question), and 1338(a)

| | |
|---|---|
| 1 | (any act of Congress relating to copyright), and pursuant to the DMCA, 17 U.S.C. |
| 2 | §§ 1201, *et seq*. Pursuant to 28 U.S.C. § 1367, this Court has supplemental |
| 3 | jurisdiction over the state law cause of action pleaded herein because it is so related |
| 4 | to Plaintiffs' claims under the DMCA as to be part of the same case or controversy. |
| 5 |       22.    This Court has personal jurisdiction over Real, and venue is proper in |
| 6 | this Judicial District pursuant to 28 U.S.C. § 1391(b) because, *inter alia,* (a) Real |
| 7 | and/or its agents are doing business in this District; and (b) a substantial part of the |
| 8 | events or omissions giving rise to this lawsuit, as well as substantial injury to |
| 9 | Plaintiffs, have occurred or will occur in interstate commerce, in the State of |
| 10 | California, and in the Central District of California as a result of Real's violations |
| 11 | of the DMCA, as alleged in detail below. Venue also is proper in this District |
| 12 | pursuant to 28 U.S.C. § 1400(a) in that Real may be found in this District in light of |
| 13 | its extensive commercial activities here. Real also has expressly consented, in |
| 14 | Section 9.5 of the DVD-CCA License Agreement, to jurisdiction and venue in this |
| 15 | Judicial District over the second cause of action herein. |

**BACKGROUND FACTS**

**Plaintiffs' Copyrighted Motion Pictures and Television Programs**

| | |
|---|---|
| 18 |       23.    Plaintiffs, directly or through their affiliates, are engaged in the |
| 19 | business of developing, producing, and distributing, and licensing to others the right |
| 20 | to distribute and exhibit, copyrighted motion pictures and/or television programs in |
| 21 | the United States and throughout the world. |
| 22 |       24.    Plaintiffs, either directly or through their affiliates and/or licensees, |
| 23 | distribute their copyrighted works in various forms, including, without limitation, |
| 24 | for exhibition in theaters, through television broadcasts, through cable and direct- |
| 25 | to-home satellite services (including basic, premium, "pay-per-view" and "video on |
| 26 | demand" television services), and through digital download platforms such as the |
| 27 | MovieLink, CinemaNow, Playstation Network, iTunes, Xbox Live Marketplace, |
| 28 | and Amazon Video on Demand services. In addition, Plaintiffs distribute their |

COMPLAINT

motion pictures and/or television programs on DVD by selling them directly or indirectly to the home viewing market. Further, consumers have the option to purchase certain of Plaintiffs' copyrighted works in configurations that include – often for an additional fee – DVDs with added features that include a so-called "Digital Download" file, *i.e.*, a file containing a digital copy of the motion picture that can be uploaded to a computer hard drive.

25.    A DVD is a digital storage medium that is capable of storing the digital video and audio information that comprises a full-length motion picture (or other audiovisual work). Since the introduction of DVDs into the marketplace, DVD has become the dominant medium for the distribution of movies or other audiovisual works for home viewing.

26.    Plaintiffs have invested (and continue to invest) substantial sums of money and effort each year to develop, produce and distribute motion pictures and/or television programs protected under copyright and other laws. Real's illegal actions, as described below, deprive Plaintiffs of their exclusive rights and the economic value of those rights.

**The DVD Technology and the Content Scramble System ("CSS")**

27.    DVDs are five-inch wide optical discs that contain recorded material in digital form, in this case Plaintiffs' copyrighted motion pictures and/or television programs. Commercial entertainment DVDs also typically contain ancillary or "bonus" material, *e.g.*, interviews or deleted scenes, which is also subject to copyright protection. DVD technology has significantly improved the clarity and overall quality of home viewing of pre-recorded content, *e.g.*, viewing audiovisual material on a television or computer screen.

28.    Because DVDs contain material in digital form, they present a heightened risk of illegal reproduction and distribution of copyrighted material. Without appropriate safeguards, the material can be digitally copied and transmitted repeatedly without degradation of the clarity and overall quality. The distribution

of works in digital form on DVDs also presents an increased risk that illegal digital copies of Plaintiffs' copyrighted works will be transmitted over the Internet, stored in computer memory, or duplicated for unlawful sale, transfer or exchange. Once these copies are "in the clear" and in the hands of others, repeated reproduction and distribution are possible, and the unlawful processes can be replicated endlessly.

29.    To substantially lower the risks of such illegal copying, each Plaintiff insisted upon the development of an access control and copy prevention system to safeguard against access to and reproduction of their copyrighted works released in digital form on DVD format. Plaintiffs currently use the Content Scramble System, or "CSS," for this purpose.

30.    CSS is an encryption-based security and authentication system that requires the use of appropriately licensed and configured hardware, such as a DVD player or computer DVD drive, to decrypt, unscramble and play back the material contained on encrypted DVDs. CSS includes elements of encryption and other security and authentication measures that require DVD playback products to operate with certain keys in order to descramble and play back copies of the material contained on the DVDs. CSS also safeguards against reproduction and distribution of such keys and of the copyrighted audiovisual content released on DVD format.

31.    The CSS technology is licensed by the DVD-CCA. The DVD-CCA licenses the CSS technology enabling the manufacture of CSS-compliant products. CSS has been licensed to hundreds of DVD player and drive manufacturers (both hardware and software) and DVD content distributors in the United States and around the world. All sectors of the DVD industry, including the software and hardware manufacturers of DVD players, drives and replicators and of descrambling modules that must be employed in DVD products, as well as disc replicators and content providers (including Plaintiffs and other motion picture and

- 8 -

television studios), have adopted CSS as direct licensees of DVD-CCA or by contracting through CSS licensees.

32.     DVD-CCA licenses CSS subject to strict requirements that prevent misuse of the DVD content by licensed players. These controls are intended to ensure, among other things, that DVD player technology is used only to enable viewing – and not copying – of DVDs. Nothing in the DVD-CCA License Agreement authorizes a licensee to create a product to make playable copies of DVD content.

33.     Plaintiffs have relied upon the security provided by CSS in manufacturing, producing and distributing to the public their copyrighted works in standard definition DVD format.

**Real Obtains A DVD-CCA License And Uses The Licensed Technology To Develop A Circumvention Product, RealDVD**

34.     On or about August 13, 2007, Defendant RealNetworks executed a DVD-CCA License Agreement in order to become a licensee of CSS technology.

35.     With the benefit of the CSS technology it obtained with authorization to build a product to *play* DVDs, Real developed RealDVD, a product that makes playable, permanent *copies* of DVDs. RealDVD bypasses the CSS protection measures by making a complete, bit-for-bit copy of the entire contents of a CSS-protected DVD onto either a local computer hard drive or a connected external USB hard drive. These copies are fully playable from the hard drive. A user of RealDVD can register up to four additional computer hard drives to their RealDVD account, for an additional charge of $19.99 each. Once registered, each of these additional hard drives will play at least those copies saved to an external USB hard drive connected to the first computer registered to the user's account.

36.     The purpose and use of RealDVD is to circumvent, unlawfully and without any authorization, the CSS access control and copy control systems that protect Plaintiffs' content on DVDs. Plaintiffs have not granted any license,

permission, or authorization to Real or its end-users to circumvent CSS as described herein.

37. RealDVD, by design and operation, causes immediate and irreparable harm to Plaintiffs and their exclusive rights protected under federal law. Users of RealDVD can load their entire DVD collection – or a series of DVDs they rent from services like Blockbuster or Netflix – to computer hard drives to create electronic "jukeboxes." RealDVD also can be used to load entire DVD collections of friends and neighbors, thus creating a significantly expanded library. Although RealDVD's graphic user interface warns users not to do so, RealDVD does not stop an end-user from loading rented or borrowed DVDs onto a computer, illegally copying the entire content, and thereby obtaining a permanent, playable copy of the content for the minimal price of a rental fee or for free (in the case of borrowed DVDs).

38. Real's dissemination of RealDVD causes substantial harm to Plaintiffs and to their intellectual property and threatens to interfere with the continued growth and development of numerous existing and developing distribution channels.

## FIRST CAUSE OF ACTION
## (VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. §§ 1201, *ET SEQ.*)
**[By Universal City Studios Productions, Paramount, Fox, Columbia TriStar, Columbia Pictures, DEI and Warner Bros. Against Both Defendants]**

39. Plaintiffs Universal City Studios Productions, Paramount, Fox, Columbia TriStar, Columbia Pictures, DEI and Warner Bros. (the "DMCA Plaintiffs") incorporate by reference each and every allegation set forth in Paragraphs 1 through 38, inclusive, as though fully set forth herein.

40. Section 1201(a)(2) of the DMCA, 17 U.S.C. § 1201(a)(2), provides, in pertinent part, that no person shall manufacture, import, offer to the public, provide,

- 10 -

or otherwise traffic in any technology, product, service, device, component, or part thereof, that (A) is primarily designed for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title; (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

41.     Section 1201(b) of the DMCA, 17 U.S.C. § 1201(b) provides, in pertinent part, that no person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that (A) is primarily designed for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

42.     CSS is a judicially recognized technological measure employed by the DMCA Plaintiffs that (a) effectively controls access to works protected by the Copyright Act and (b) effectively protects the DMCA Plaintiffs' copyrights by controlling whether an end user can reproduce, manufacture, adapt, publicly perform and/or distribute copies of their copyrighted works or portions thereof.

43.     Real offers to the public, provides, and/or otherwise traffics in a software product – RealDVD – that (a) is primarily designed or produced for the purpose of circumventing CSS or the protection afforded by CSS; (b) has only limited commercially significant purpose or use other than to circumvent CSS or the protection offered by CSS; and/or (c) is marketed by Real and/or others acting in concert with it with the knowledge that RealDVD is used to circumvent CSS or the protection afforded by CSS.

44.     By circumventing CSS and by offering to the public and providing the services hereinabove alleged, Real has violated 17 U.S.C. §§ 1201(a)(2), and 1201(b).

45.     The DMCA Plaintiffs will sustain actual damage in that, among other things, the value of their copyrighted works will be reduced and their goodwill will be harmed as a result of Real's violation of 17 U.S.C. §§ 1201(a)(2), and 1201(b). The DMCA Plaintiffs also are entitled to Real's profits from its violations of 17 U.S.C. §§ 1201(a)(2), and 1201(b). Alternatively, at the DMCA Plaintiffs' election, Plaintiffs are entitled to an award of the maximum statutory damages as permitted by the DMCA, 17 U.S.C. § 1203(c).

46.     Real's conduct, unless enjoined and restrained by the Court, will cause grave and irreparable injury to the DMCA Plaintiffs, who have no adequate remedy at law. Pursuant to 17 U.S.C. § 1203, the DMCA Plaintiffs are entitled to a permanent injunction prohibiting further violations of § 1201.

47.     The DMCA Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 1203.

COMPLAINT

# SECOND CAUSE OF ACTION

## (BREACH OF CONTRACT)

**[By Universal City Studios, Paramount, Fox, Sony Pictures, WDP and Warner Bros. Against Defendant RealNetworks]**

48.     Plaintiffs Universal City Studios, Paramount, Fox, Sony Pictures, WDP and Warner Bros. (collectively, the "Beneficiary Claim Plaintiffs") incorporate by reference each and every allegation set forth in Paragraphs 1 through 38, inclusive, as though fully set forth herein.

49.     As part of the consideration for the DVD-CCA License Agreement, RealNetworks expressly agreed to confer third-party beneficiary rights on any "Eligible Content Provider," defined in Section 9.5 as an entity that has commercially released one or more prerecorded motion pictures on DVD utilizing CSS. The Beneficiary Claim Plaintiffs and/or their affiliated companies are CSS Licensees that have commercially released one or more prerecorded motion pictures on DVD utilizing CSS. As such, the Beneficiary Claim Plaintiffs are Eligible Content Providers under the DVD-CCA License Agreement and are express third-party beneficiaries with standing to initiate or institute a Beneficiary Claim (under Section 9.5(a)) to require RealNetworks to comply with its obligations under the DVD-CCA License Agreement. The Beneficiary Claim Plaintiffs bring their state law breach of contract action against RealNetworks as a Beneficiary Claim under Section 9.5 of the DVD-CCA License Agreement. The Beneficiary Claim Plaintiffs have satisfied each and every condition precedent under the DVD-CCA License Agreement to commence a Beneficiary Claim against RealNetworks.

50.     The DVD-CCA License Agreement imposes a number of specific restrictions on RealNetworks. Among other requirements, Section 4.2 of the DVD-CCA License Agreement requires that RealNetworks only manufacture DVD products in compliance with certain technical and procedural specifications (the

"CSS Specifications"). The CSS Specifications require, among other things that DVD products implement certain content features intended to protect against access to, duplication of, and/or redistribution of CSS-protected content. One such measure is that, in order for a user of a DVD to watch a motion picture, a physical DVD must be present in the player or computer DVD disk drive, a provision that the RealDVD software clearly violates.

51. RealDVD fails to comply with the DVD-CCA License Agreement, including the CSS Specifications, by, among other things, allowing Plaintiffs' copyrighted content to be viewed without having a physical DVD in the disk drive of the computer. This is in material breach of Section 4.2 of the DVD-CCA License Agreement.

52. RealNetworks' breaches of Section 4.2 of the DVD-CCA License Agreement will injure The Beneficiary Claim Plaintiffs by exposing their valuable copyrighted content to infringement of their exclusive rights, including without limitation the exclusive right of reproduction. Such injury is irreparable in that money damages alone cannot compensate the Beneficiary Claim Plaintiffs for such injury. Accordingly, as set forth below, the Beneficiary Claim Plaintiffs seek injunctive relief as authorized by the DVD-CCA License Agreement. Such measures are necessary and appropriate to protect the Beneficiary Claim Plaintiffs' copyrighted works.

53. As a direct and proximate result of RealNetworks' breaches of the DVD-CCA License Agreement, the Beneficiary Claim Plaintiffs will incur mitigation costs to remedy the effects of those breaches, and have and will incur attorneys fees enforcing their rights.

54. The Beneficiary Claim Plaintiffs further allege, on information and belief, that RealNetworks' conduct was willful and/or malicious.

55. Pursuant to Section 9.5 of the DVD-CCA License Agreement, the Beneficiary Claim Plaintiffs are entitled to an award of reasonable attorneys' fees,

expenses and costs of up to $2 million, as well as recovery of the Beneficiary Claim Plaintiffs' mitigation costs of up to $100,000, all as set forth in Section 9.5 of the DVD-CCA License Agreement.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Real and against all of its affiliates, agents, servants, employees, partners and all persons in active concert or participation with it, for the following relief:

(a)     On the first cause of action, a temporary restraining order and preliminary and permanent injunctive relief enjoining Real and all of its employees, officers, directors, agents, servants, affiliates, attorneys, successors and assigns, and all those acting directly or indirectly in concert or participation with any of them, from violating Plaintiffs' rights under the DMCA by selling, offering, marketing or otherwise trafficking in RealDVD, or any product with substantially similar functionality;

(b)     On the first cause of action, an award to the DMCA Plaintiffs of damages they have sustained or will sustain by reason of Real's violation of 17 U.S.C. §§ 1201(a)(2) and/or 1201(b), all profits derived by Real from such conduct, or in lieu thereof, should the DMCA Plaintiffs so elect, such statutory damages as the Court shall deem proper as provided in 17 U.S.C. § 1203(c), including damages for each act of circumvention, device, product, component, offer or performance of service in violation of 17 U.S.C. §§ 1201(a)(2) and/or 1201(b);

(c)     On the second cause of action, preliminary and permanent injunctive relief enjoining RealNetworks and anyone acting in concert with it from violation of the DVD-CCA License

COMPLAINT

1  Agreement, including but not limited to the obligations set forth

2  in Section 4.2 of the DVD-CCA License Agreement;

3  (d)  On both causes of action, an order directing that Real file with

4  the Court and serve upon counsel for Plaintiffs within thirty (30)

5  days after the entry of such order or judgment, a report in

6  writing and under oath setting forth in detail the manner and

7  form in which Real has complied with the injunction;

8  (e)  Plaintiffs' costs and reasonable attorneys' fees in accordance

9  with 17 U.S.C. §§ 505 and/or 1203 and/or as set forth in Section

10  9.5 of the DVD-CCA License Agreement;

11  (f)  For recovery of the Beneficiary Claim Plaintiffs' mitigation

12  costs of up to $100,000, as set forth in Section 9.5 of the DVD-

13  CCA License Agreement;

14  (g)  Prejudgment and post-judgment interest; and

15  (h)  All such further and additional relief, in law or in equity, to

16  which Plaintiffs may be entitled or which the Court deems just

17  and proper.

18  DATED: September 30, 2008          MUNGER, TOLLES & OLSON LLP

19                                     MITCHELL SILBERBERG & KNUPP
20                                     LLP

21                                     GREGORY P. GOECKNER
                                       DANIEL E. ROBBINS

22

23                                     By: _____

24                                         GLENN D. POMERANTZ

25                                     Attorneys for Plaintiffs

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV08- 6412 SJO (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

GLENN D. POMERANTZ (SBN 112503)
Glenn.Pomerantz@mto.com
BART H. WILLIAMS (SBN 134009)
Bart.Williams@mto.com
KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Tel: (213) 683-9100; Fax: (213) 687-3702

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS LLLP, PARAMOUNT PICTURES CORPORATION, TWENTIETH CENTURY FOX FILM CORPORATION, SONY PICTURES TELEVISION INC., COLUMBIA PICTURES INDUSTRIES, INC., SONY PICTURES ENTERTAINMENT INC., DISNEY ENTERPRISES, INC., WALT DISNEY PICTURES and WARNER BROS. ENTERTAINMENT INC. <br><br> PLAINTIFF(S) <br><br> V. <br><br> REALNETWORKS, INC. and REALNETWORKS HOME ENTERTAINMENT, INC. <br><br> DEFENDANT(S). | CASE NUMBER <br><br> CV08-06412 SJO AJWx <br><br><br> **SUMMONS** |

TO:DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _____, whose address is _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __SEP 3 0 2008__

By: _____

CV-01A (12/07)

American LegalNet, Inc.
www.USCourtForms.com

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS LLLP, PARAMOUNT PICTURES CORPORATION, TWENTIETH CENTURY FOX FILM CORPORATION, SONY PICTURES TELEVISION INC., COLUMBIA PICTURES INDUSTRIES, INC., SONY PICTURES ENTERTAINMENT INC., DISNEY ENTERPRISES, INC., WALT DISNEY PICTURES AND WARNER BROS. ENTERTAINMENT INC.

**DEFENDANTS**
REALNETWORKS, INC. and REALNETWORKS HOME ENTERTAINMENT, INC.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Tel: (213) 683-9100; Fax: (213) 687-3702

**Attorneys** (If Known)
Glenn D. Pomerantz (SBN 112503) Glenn.Pomerantz@mto.com
Bart H. Williams (SBN 134009) Bart.Williams@mto.com
Kelly M. Klaus (SBN 161091) Kelly.Klaus@mto.com

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☒ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No          ☐ **MONEY DEMANDED IN COMPLAINT: $** $2,500 per product

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Digital Millennium Copyright Act, 17 U.S.C. Sections 1201(a)(2), 1201(b)(1)

**VII. NATURE OF SUIT** (Place an X in one box only.)

---

**CV08-06412**

American LegalNet, Inc.
www.FormsWorkflow.com

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL ROPERTY | PRISONER ETITIONS | LABOR |
|---|---|---|---|---|---|
| ☑ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | | ☐ 380 Other Personal Property Damage | ☐ 530 General | |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

---

FOR OFFICE USE ONLY:  Case Number: _____ .

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

---

American LegalNet, Inc.
www.FormsWorkflow.com

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Washington |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____     Date  September 29, 2008

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com