1  JAMES A. DIBOISE, State Bar No. 83296
   Email:  jdiboise@wsgr.com
2  COLLEEN BAL, State Bar No. 167637
   Email:  cbal@wsgr.com
3  MICHAEL A. BERTA, State Bar No. 194650
   Email:  mberta@wsgr.com
4  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
5  One Market, Spear Tower, Suite 3300
   San Francisco, CA 94105
6  Telephone:  (415) 947-2000
   Facsimile:  (415) 947-2099
7
   Attorneys for Defendants
8  REALNETWORKS, INC. and
   REALNETWORKS HOME
9  ENTERTAINMENT, INC.

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

| | |
|---|---|
| 13 UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS LLLP, PARAMOUNT PICTURES CORPORATION, TWENTIETH CENTURY FOX FILM CORPORATION, SONY PICTURES TELEVISION INC., COLUMBIA PICTURES INDUSTRIES, INC., SONY PICTURES ENTERTAINMENT, INC., DISNEY ENTERPRISES, INC., WALT DISNEY PICTURES and WARNER BROS. ENTERTAINMENT, INC., | Case No: CV-08-06412 SJO AJW  DECLARATION OF JACQUELINE LANG IN OPPOSITION TO *EX PARTE* APPLICATION OF PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION |

                 Plaintiffs,

            v.

   REALNETWORKS, INC., and
   REALNETWORKS HOME
   ENTERTAINMENT, INC.,

                 Defendants.

DECLARATION OF JACQUELINE LANG

3490134

I, Jacqueline Lang, declare as follows:

1. I am the Vice President of Marketing for Real Networks, Inc. ("Real"), and have been employed by Real since February of 2001. I have personal knowledge of the facts stated herein. I am over the age of eighteen, and would and could testify truthfully thereto if called as a witness.

2. Real was ready to officially release its RealDVD product on September 8, 2008 ("initial launch"). Real carefully planned the release of RealDVD for months, and timed the initial launch to coincide with the "DEMO Fall 08" Conference on September 8, where Real's Chairman and CEO, Rob Glaser, was a speaker. The DEMO Fall 08 Conference was held in San Diego, California, and promoted itself as "The Launchpad for Emerging Technology." Real intended for Mr. Glaser to announce RealDVD while speaking at the conference, and at the same time, Real would release the product and make it available to consumers. Real has consistently followed this practice, as timing the release of a new product with a technology conference permits Real to capitalize on the publicity surrounding a conference and reach an interested audience.

3. Shortly before the initial launch, Real was contacted by various studio plaintiffs, who objected to the release of the product, and expressed concerns that RealDVD violated the terms of the standard CSS license agreement with the DVD Content Control Association, as well as copyright law. The evening before the initial launch date of September 8, Real decided to abort the initial launch in order to try to resolve its differences with the studios in good faith. Instead of releasing RealDVD as planned on September 8, Real made last minute changes to its September 8, 2008 press release, announcing that the product would "be available this month." This was the first time that Real had ever announced a product without simultaneously making it available to end users, and therefore, Real stated that it would release RealDVD during the month of September.

4. Real expended considerable effort and resources to prepare for the initial launch of RealDVD that ultimately were not optimized when the launch was pulled in order to address the studios' concerns. For example, in preparation for the planned September 8 launch, Real's public relations department worked with an outside PR agency to reach dozens of different publications and encourage them to generate press regarding RealDVD. Leading up to the planned September 8 initial launch, Real's PR department and outside agency worked furiously promoting the product, giving demonstrations of the product and answering technical questions. Upon the September 8 announcement of RealDVD and in the days that followed, press regarding RealDVD appeared in the New York Times, Business Week, Newsweek, PC World and USA Today, among others. While these articles undoubtedly generated interested potential customers, such customers had no way to purchase RealDVD as the product was being held back by Real in an attempt to resolve the concerns of the studios.

5. Real also committed advertising resources to the planned initial September 8 launch. Real purchased approximately $175,000 of web media and ads throughout the Internet to be run on certain specific days around September 8 to promote RealDVD. When Real decided to abort the initial product launch, Real was forced to pull back all of its advertising efforts and ask its advertising partners to delay the committed-to advertising. Such advertisers were under no obligation to delay the planned RealDVD advertising, and Real expended significant goodwill in asking its advertising partners to try to find other sponsors on virtually no notice to fill the ad spots for the committed days.

6. In keeping with its public statements that it would release the RealDVD product during the month of September, Real released and made the RealDVD product available for download on September 30, 2008, at 8:00 a.m. EST.

7. In anticipation of the September 30 launch, Real made a tremendous PR push to attempt to recreate as much as possible the initial publicity "buzz" that

3489494

surrounded RealDVD at the time of the planned initial September 8 launch. In the days leading up to the September 30 launch, Real's PR department and outside PR agencies again contacted numerous media outlets encouraging them to write articles regarding RealDVD. While Real made extensive PR efforts for the September 30 launch, many of the publications which had already generated press regarding RealDVD were not willing to run second articles on the product. Real also engaged in extensive advertising efforts related to the September 30 launch of RealDVD, including purchasing advertising space and key word searches.

8. If Real were enjoined from distributing RealDVD, the results to Real would be devastating. Particularly in light of Real's good faith decision to pull the September 8 launch to try to accommodate the plaintiff studios, the failure to successfully launch RealDVD on this second effort would cause Real irreparable loss of credibility with its customers and potential customers, shareholders, analysts, advertising partners, PR contacts and the market generally. Much of the goodwill and trust Real has developed over the years would be lost. Even if Real were ultimately allowed to resume sales of the product, the ultimate success of RealDVD, and perhaps other Real offerings, would be irreparably impaired.

9. In addition, Real currently has a "first mover advantage" with respect to the RealDVD product as there are no legal competitive products at this price point. In promoting the release of RealDVD, Real has explained its product in detail to the market (and to its competitors), provided demonstrations and answered technical questions. While the technical details of RealDVD have not been released, competitors have been alerted both to the feasibility and the attractiveness of a similar product. Any further delay in the release of RealDVD will pose an unacceptable business risk to Real, as Real could lose its first mover advantage which could never be recovered.

10. Further, it is critical for the success of RealDVD that the product gain traction in the market prior to the holiday season. As is the case with most

1  companies, Real's financial expectations for RealDVD include strong holiday sales
2  which it would almost certainly fail to achieve if the product were not available to
3  consumers during the next few months leading up to the holidays (when holiday
4  purchases are made). Real expects that sales of RealDVD in the fourth quarter of
5  2008 will account for 25%-40% of its sales of that product on an annual basis.

6      11. Finally, if distribution of the newly-released RealDVD product were
7  enjoined, Real would be forced to cancel its advertising commitments and halt its
8  media campaign for a second time. If the distribution of RealDVD were enjoined,
9  Real would almost certainly not be able to engage in a successful PR campaign
10 relating to RealDVD for a third time, which would irreparably impair the ultimate
11 success of RealDVD in the market.

13      I declare under penalty of perjury that the foregoing is true and correct.
14 Executed at Bellevue, Washington on September 30, 2008.

Jacqueline Lang