JAMES A. DIBOISE, State Bar No. 83296
Email: jdiboise@wsgr.com
COLLEEN BAL, State Bar No. 167637
Email: cbal@wsgr.com
MICHAEL A. BERTA, State Bar No. 194650
Email: mberta@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Facsimile: (415) 947-2099

Attorneys for Defendants
REALNETWORKS, INC. and
REALNETWORKS HOME
ENTERTAINMENT, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS LLLP, PARAMOUNT PICTURES CORPORATION, TWENTIETH CENTURY FOX FILM CORPORATION, SONY PICTURES TELEVISION INC., COLUMBIA PICTURES INDUSTRIES, INC., SONY PICTURES ENTERTAINMENT, INC., DISNEY ENTERPRISES, INC., WALT DISNEY PICTURES and WARNER BROS. ENTERTAINMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> REALNETWORKS, INC., and REAL NETWORKS HOME ENTERTAINMENT, INC. <br><br> Defendants. | CASE NO.: <br> CV 08-06412 SJO AJWx <br><br> **DECLARATION OF GORDON KLEIN IN OPPOSITION TO *EX PARTE* APPLICATION OF PLAINTIFFS FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |

DECLARATION OF GORDON KLEIN

I, Gordon Klein, declare as follows:

1. I am a faculty member at UCLA's Anderson School of Management, where I have taught 11 accounting, tax, business law, and entrepreneurship courses in the undergraduate program and MBA Program since 1981. In addition, I was a faculty member from 1987 to 2000 at UCLA's Law School, where I taught courses in accounting, taxation, and financial analysis. I taught similar courses as an Adjunct Professor in the LLM in Taxation Program at Loyola Law School in Los Angeles, California during fall 2001 and 2002. I am a member of the California Bar (inactive), admitted in 1979, and a C.P.A., certified in the state of Illinois in 1976. I have conducted executive education seminars in financial and tax aspects of business management to, among others, partners at PricewaterhouseCoopers, members of the German Bundestadt governing body, and the Finance Committee of the People's Republic of China. I have authored several books concerning managerial accounting, cost accounting, introductory accounting, and managerial finance, as identified in my curriculum vita. I earned a B.B.A. from the University of Michigan Business School in 1976, graduating Phi Beta Kappa, and I earned a J.D. from the University of Michigan Law School in 1979. My curriculum vita, including a list of my publications over the last ten years, is attached at the end of this report as Exhibit 1.

2. I have served as an expert witness in various cases, including cases in Federal Court and in Los Angeles Superior Court, and I have served as a Superior Court referee in Los Angeles and Orange Counties. I have testified in several major tax matters, including testifying on behalf of the US Attorney's Office in the case *United States v. Mitchelson*. A list of my expert testimony experience for the last four years is attached hereto as Exhibit 2. I am being compensated at a rate of $550 per hour for my independent review and analysis provided in this case.

3. I have been asked to address issue of the Studios' claims that RealDVD's presence in the marketplace threatens immediate and irreparable harm to the Studios.

4. I understand that the Studios have represented that the threat of "rent-rip-return" behavior is the most obvious and ominous.[1] I further understand that the Studios have represented that RealDVD is improperly holding itself out to consumers as a "legal" product.

5. Based on my understanding, it is my opinion that the Studios' analysis confuses two distinct markets: the legal market which RealDVD addresses and the illegal market.

6. I have examined the characteristics of several products which enable the copying of DVD files. Attached as Exhibit 3 is a table comparing these products.

7. From an economic point of view, these products represent two different markets because consumers who wish to operate in an illegal environment are not aided by RealDVD.

8. In a recent article published in PC Magazine, the author states, "Unfortunately, the resulting [RealDVD] movie files are locked up tighter than Hannibal Lecter; you can play them on up to five licensed PCs, but you can't watch them on your iPod or other device. As such, RealDVD doesn't really give users what they want: a way to put their purchased movies on their PCs and move them to iPods, iPhones, PSPs, and network attached devices....Essentially, we want the same freedom with DVDs that we have with CDs, and there are lots of DVD-ripping and file-converting tools online that give users that freedom. Many of the best ones are

---

[1] Declaration of Michael Dunn in support of *Ex Parte* Applications of Plaintiffs for Temporary Retraining Oder and Order to Show Cause re: Preliminary Injunction Thereof, p. 4 lns. 10-11.

free or accept donations..."[2] Another article states that RealDVD is "a [really] more cumbersome way of doing something that [consumers have] already been doing for years now with DVD Decrypter, AnyDVD, Handbrake, MacTheRipper, RipIt and the like."[3]

9. Based on this information, it is my opinion that RealDVD wouldn't have any significant impact on the end-user's choice between illegal encryption-stripping products which enable a bit-for-bit copying of a DVD file and RealDVD player which 1) is more expensive ($30 compared to mostly freeware) and 2) has results which are inferior (i.e., more restrictive) compared to those obtainable by one of the other products.

10. In addition, I have been asked to address the Studios' allegations that damages are not quantifiable if they are significant at all. In his declaration, Mr. Michael Dunn articulates many facts that assist in this exercise. For instance, he states that last month DVD rentals were 175 million at an average price of $3.25. He also states that 50 million new DVD movies were sold at an average price of $18.50. Assuming *arguendo* that the RealDVD player might increase the number of "rent-rip-return" events, Mr. Dunn's information provides important data to quantify lost revenues associated with consumers' actions in copying a rented DVD in lieu of purchasing it outright.

/ / /

/ / /

---

[2] Monson, Kyle, "7 Tools for Ripping Your DVDs," 9/11/08, PC Magazine, accessed 9/25/08, http://www.pcmag.com/print_article2/0,1217,a%253D231870,00.asp

[3] Paczkowski, John, "Rent. Rip. Return.", 9/8/08, All Things Digital, accessed 9/30/08, http://digitaldaily.allthingsd.com/20080908/rent-rip-return/

DECLARATION OF JACQUELINE LANG     -4-     3489494



11.  It is my opinion that there are also a number of ways to quantify damages which meet the legal requirement of reasonable certainty. For example, one could conduct surveys of potential users to estimate possible diverted units. This data, when coupled with pricing data and cost data customarily maintained by the Studios in the ordinary course of business, would allow for damages to be ascertained with a reasonable degree of certainty.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

*G Klein*

Gordon Klein                                   September 30, 2008