1  JAMES A. DiBOISE, State Bar No. 83296
   Email: jdiboise@wsgr.com
2  COLLEEN BAL, State Bar No. 167637
   Email: cbal@wsgr.com
3  MICHAEL A. BERTA, State Bar No. 194650
   Email: mberta@wsgr.com
4  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
5  One Market Street
   Spear Tower, Suite 3300
6  San Francisco, CA 94105

7  Attorneys for Plaintiffs
   REALNETWORKS, INC. and
8  REALNETWORKS HOME ENTERTAINMENT, INC.

9
                    UNITED STATES DISTRICT COURT
10
                    CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS LLLP, PARAMOUNT PICTURES CORPORATION, TWENTIETH CENTURY FOX FILM CORPORATION, SONY PICTURES TELEVISION INC., COLUMBIA PICTURES INDUSTRIES, INC., SONY PICTURES ENTERTAINMENT INC., DISNEY ENTERPRISES, INC., WALT DISNEY PICTURES, and WARNER BROS. ENTERTAINMENT INC., <br><br> Plaintiffs, <br><br> v. <br><br> REALNETWORKS, INC.; and REALNETWORKS HOME ENTERTAINMENT, INC., <br><br> Defendants. | **CASE NO.:** <br> **2:08-cv-06412 SJO AJWx** <br><br> **DEFENDANTS REALNETWORKS, INC. AND REALNETWORKS HOME ENTERTAINMENT, INC.'S OPPOSITION TO PLAINTIFFS'** ***EX PARTE*** **APPLICATION FOR A TRO** |

DEFENDANTS' OPPOSITION TO EX PARTE                                   CASE NO. 08-cv-06412-SJO-AJW
APPLICATION FOR TRO

Defendants RealNetworks, Inc. and RealNetworks Home Entertainment, Inc. ("Real" or "Defendants") submit the following in opposition to Plaintiffs *Ex Parte* Application for Temporary Restraining Order:

## INTRODUCTION

Plaintiffs filed a complaint and sought a TRO today seeking to disrupt Real's in-progress launch of RealDVD this morning. Plaintiffs have known since the first week of September that Real was planning to launch the RealDVD product by today, and as is evident from the volume and content of Plaintiffs' *ex parte* papers (comprising a 25-page brief and four inches of supporting documents), they have been preparing their papers for quite some time. Yet, they chose not to share those papers with Real until approximately 10:00 am this morning, in an apparent effort to block any possibility of a response from Real.

Given these time constraints, Real has only had enough time to address here a few of the highlights demonstrating why Plaintiffs' *ex parte* application should be denied. Accordingly, Real requests that if the Court is inclined to grant Defendants' *ex parte* application for a TRO, that Real be given an opportunity to appear before the Court to address the issues more fully.

### I. This Action Should Be Dismissed In Favor Of The Action Filed by Real in the Northern District of California.

This action should be dismissed in favor of the first filed, properly venued action initiated by Real today (September 30, 2008) at 9:04 a.m. in the Northern District of California. The action initiated by Real raises issues virtually identical to those presented here, but also includes a necessary party to the resolution of these issues, the DVD Copy Control Association ("DVD CCA"), the party that licenses the CSS technology at issue. Real's action seeks a declaratory judgment that RealDVD is in compliance with the CSS License Agreement and the DMCA. Federal courts recognize a doctrine of federal comity that permits district courts to

decline jurisdiction when a complaint involving the same parties and issues has already been filed in another court.

Plaintiffs suggest that Real's declaratory judgment action should be dismissed as an "anticipatory filing." Plaintiffs are dead wrong. Pursuant to the agreement of the parties, neither party could file an action until this morning, when Real filed its declaratory judgment action.[1] More importantly, Real filed its declaratory judgment action in the *only* county where all the necessary parties could be venued. Plaintiffs filed in Los Angeles to avoid joining the DVD Copy Control Association ("DVD CCA") – a necessary party to the claim for breach of the CSS License Agreement – because the DVD CCA was only amenable to suit in Santa Clara County. That agreement is fundamental and dispositive to the parties' dispute. Section 10.4(b) of the CSS License Agreement *mandates* that actions between Real and the DVD CCA be litigated in the state and federal courts in Santa Clara County. *See* Pomerantz Decl., Exh. F. Thus, the Northern District of California is the only appropriate venue for these claims. Real filed its declaratory judgment action in the Northern District of California out of necessity, not out of bad faith or a desire to forum shop.

## II. RealDVD Fully Complies With The CSS License Agreement And Therefore Is Not "Circumventing" The CSS Technology.

Plaintiffs' argument depends on the assertion that Real is "circumventing" CSS technology. Plaintiffs' assertions are both conclusory and wrong. Real's use of the CSS technology is licensed under the CSS License Agreement ("CSS Agreement"), and Real complies with the requirements of that license. There is therefore no legitimate argument that Real is circumventing the CSS technology when it uses that technology pursuant to a valid license.

Plaintiffs seek to wave away the CSS Agreement and ask this Court to look

---

[1] Prior to receiving any correspondence from Plaintiffs' counsel, Real initiated its preparation for filing its declaratory judgment action on the day it was to launch RealDVD.

solely to copyright law. But the CSS Agreement must be the starting point of the analysis, as it sets forth the parameters of Real's obligations with respect to the CSS technology. As set forth in the Declaration of Jeffrey Buzzard, Real has a license to the CSS technology, received the technical specifications for implementing the CSS technology, and designed its product in compliance with the CSS Agreement – all to work with the CSS technology utilized on DVDs according to the specifications, not to circumvent that technology. RealDVD is therefore fully compliant with the requirements of that Agreement. Because Real is authorized by its licensor, DVD CCA, to do everything it is doing with respect to the CSS technology, there is no legitimate basis to contend that it is somehow "circumventing" that technology. The entire basis for Plaintiffs' DMCA argument is based on this false premise – without that premise, Plaintiffs' argument collapses.

In an effort to confuse the issue, Plaintiffs assert that – regardless of the terms of the actual CSS Agreement and the actual performance and capabilities of CSS technology for licensed users –CSS technology was (according to Plaintiffs) *intended* to protect against any DVD copying whatsoever. Thus, Real must be circumventing *something*. But, again, Plaintiffs are wrong. The question is not what CSS is intended to do in the abstract, but what CSS permits **licensed** CSS users to do.

First, if CSS were supposed to prevent copying by a licensed user, the CSS Agreement would prohibit such conduct. But, the CSS Agreement does not contain such a prohibition. Plaintiffs attempt to construct a copying prohibition from two fragments in the CSS Agreement (one taken from a recital of the CSS Agreement and another taken from a technical specification). But the recital relied upon by Plaintiffs (Mot. at 8, citing Pomerantz Exh. F) describes the intention of two non-parties to the contract, Matshushita and Toshiba, to prohibit *unauthorized* copying – not all copying. And, the technical specification, which merely describes the purpose of a certain type of authentication, suffers from the same flaw. (*See* Mot. at

4, citing Pomerantz Exh. G). RealDVD performs that authentication as required by the license agreement. Whether that authentication process may prevent **unlicensed** users from copying is simply irrelevant to what a licensed user may do under the terms of the CSS Agreement.

Indeed, whether the CSS Agreement prohibits copying was recently litigated by the actual licensor to the CSS Agreement (the DVD Copy Control Association), and the Santa Clara Superior Court found after a full trial that there existed no such prohibition. *DVD Copy Control Association, Inc. v. Kaleidescape, Inc.*, Santa Clara Superior Court Case No. 1-04-CV031829. Kaleidescape continues to be accessible today. Indeed, Plaintiffs have neither asserted any DMCA claims against Kaleidescape nor sought an injunction against their product.

Second, as explained in Mr. Buzzard's declaration, it is simply not true that the CSS protection scheme prevents copying by **licensed** CSS users. As Mr. Buzzard explained, the CSS system controls access to a DVD and decryption of content by licensed applications. This distinction is critical and removes this case from the ambit of cases such as *Universal City Studios, Inc. v. Corley,* 273 F.3d 429 (2nd Cir. 2001) and *321 Studios v. MGM Studios, Inc.*, 307 F. Supp. 2d 1085 (N.D. Cal. 2004), cited by Plaintiffs involving unlicensed products. In *321 Studios*, for example, the Court recognized that CSS does not, in fact, prevent copying of DVD content. Instead, the Court noted that the unlicensed copy would be useless without licensed copies of the correct CSS keys. That reasoning simply does not apply here, where Real is a licensed CSS user with licensed access to the correct content keys.[2] Plaintiffs' reliance on case law regarding unlicensed users is entirely misplaced.

In sum, RealDVD fully complies with and functions within the scope of the CSS Agreement, works with the CSS technology on a DVD, and does nothing to

---

[2] Contrary to the claims of the Plaintiffs, RealDVD does not strip or remove the CSS encryption from the image of the DVD created on a user's storage medium. *See* Buzzard Decl., ¶9.

circumvent any such technology.  There is therefore no DMCA violation.

**III.   The Balance of Hardships Favors Defendants**

       **A.   The Harms Claims by Plaintiffs Are Compensable or Illusory.**

Plaintiffs contend that "starting today," DVD users are able to copy for the first time DVD content onto their computer drives as a result of the product launch of RealDVD.  Mot. at 1.  According to Plaintiffs, this will suddenly change consumers' attitudes about DVD copying, irreparably harm sales of DVDs and the rental market, and irreparably harm the Plaintiffs' developing markets.  Plaintiffs' argument ignores reality.  Unlicensed DVD software products that decrypt and remove the encryption of CSS ("rippers") have been available, widely used and discussed in the media for years.  Plaintiffs themselves claim to have "lost" $2.3 billion in revenue to Internet piracy in 2005 alone (a statement which not only illustrates the state of the industry prior to the launch of RealDVD, but also undercuts Plaintiffs' claim that alleged damages here are somehow new and immeasurable). [*See* Motion Picture Association of America website, www.mpaa.org.].

As noted in the recent article in PC Magazine, unlicensed "rippers" provide much greater flexibility, often for free, to those willing to use an unlicensed product:

> Unfortunately, the resulting [RealDVD] movie files are locked up tighter than Hannibal Lecter; you can play them on up to five licensed PCs, but you can't watch them on your iPod or other device.  As such, RealDVD doesn't really give users what they want:  a way to put their purchased movies on their PCs and move them to iPods, iPhones, PSPs, and network attached devices . . .  Essentially, we want the same freedom with DVDs that we have with CDs, and there are lots of DVD-ripping and file-converting tools online that give users that freedom.

Many of the best ones are free or accept donations . . ."[3]
RealDVD does not offer any new or attractive options to users interested in piracy. To the contrary, RealDVD is targeted precisely to those users who have avoided rippers, and are instead simply looking to make a backup copy of what is notoriously fragile, cumbersome and inconvenient to use in today's digital world – a DVD disc. *See* Declaration of Gordon Klein, ¶¶5-9. Backup copies made with RealDVD simply will not work in any hard drive other than the one upon which they were initially created and cannot be disseminated on the Internet to others for use. This is not piracy – this use is well within the fair use exception to copyright infringement. *See, e.g., Sony Corporation of America v. Universal City Studios, Inc.,* 464 U.S. 417 (1983).[4]

In addition, Plaintiffs undercut their own claims of irreparable harm. Plaintiffs claim that RealDVD will upset Plaintiffs' licensing schemes with others. But, the fact of these licensing schemes with Apple or Amazon only confirms that what is at issue here, if anything, is calculable damages, not unquantifiable harm. In fact, as explained in the Klein Declaration, Plaintiffs' declarant Dunn provides specific data that could be used to quantify the alleged harm to Plaintiffs. *See, e.g., Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("'The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended … are not enough.'")

More importantly, Plaintiffs' argument mixes the markets for digital downloads with the market for sales or rentals of DVDs. For example, one does not purchase a digital download of the same movie that one bought on DVD. The user

---

[3] Monson, Kyle, "Tools for Ripping Your DVDs," 9/11/08 PC Magazine, http://www.pcmag.com/print_article2/0,1217a%253D231870,00.asp

[4] Indeed, had there existed any real threat of irreparable harm from the violation of the DMCA that Plaintiffs claim here, Plaintiffs should have brought this suit long ago against Kaleidescape rather than acquiesce to Kaleidescape's continued presence in the market to this day.

can watch the DVD. At best, the user only purchases the digital download of a previously purchased DVD for a transformative use, *i.e.*, to play on an iPod. RealDVD does NOT permit transformative uses – a RealDVD will not work on an iPod. Therefore claims of harm regarding the digital downloads are simply misplaced.

Plaintiffs' claims of harm are at best compensable, but more likely entirely illusory. Either way, Plaintiffs cannot and have not met their burden to justify the entry of the extraordinary remedy of a temporary restraining order. *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374 (9th Cir. 1985) ("Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury.")

### B. Real Would Suffer Irreparable Injury If An Injunction Were Entered.

An injunction against RealDVD would be devastating to Defendants, as they would be forced to pull from the market a product which was announced and publicized in early September, and whose launch was already delayed once in a failed effort to appease the Plaintiffs. As explained in the Declaration of Jacqueline Lang ("Lang Dec."), Real initially planned to launch RealDVD upon the announcement of the product at a technology conference on September 8, 2008. Lang Dec., ¶ 2. Real made a tremendous public relations and advertising push to prepare for the initial RealDVD launch, including securing press regarding RealDVD in dozens of publications (including the New York Times, Business Week, Newsweek, PC World and USA Today), giving demonstrations of the product and answering technical questions. Lang Dec., ¶ 4.

Prior to the September 30th launch of RealDVD, Real attempted to recreate as much as possible the initial publicity "buzz" that surrounded RealDVD at the time of the planned initial September 8 launch. Lang Dec., ¶ 7. In the days leading up to the September 30th launch, Real's PR department and outside PR agencies again

1 contacted numerous media outlets encouraging them to write articles regarding
2 RealDVD. While Real made extensive PR efforts for the September 30th launch,
3 many of the publications which had already generated press regarding RealDVD
4 were not willing to run second articles on the product. *Id.*

5     If RealDVD were enjoined, thereby undermining its second effort to launch
6 the product, Real will lose credibility with its customers and potential customers,
7 shareholders, analysts, advertising partners, PR contacts and the market generally.
8 Much of the goodwill that Real has developed over the years would be lost. Even if
9 Real were ultimately allowed to resume sales of the product, the ultimate success of
10 RealDVD, Real's image, and perhaps other Real offerings, would be irreparably
11 impaired. Lang Dec., ¶ 8. Real would most certainly not be able to successfully
12 execute a "third" publicity blitz and launch of the product after having been tainted
13 with the mislabel of an illegal product following two aborted launches.

14     Most importantly, Real currently has a "first mover advantage" with respect to
15 the RealDVD product as there are no licensed competitive products at this price
16 point. Lang Dec., ¶ 9. In promoting the release of RealDVD, Real has explained its
17 product in detail to the market (and to its competitors), provided demonstrations and
18 answered technical questions. While the technical details of RealDVD have not
19 been released, competitors were alerted in early September both to the feasibility and
20 the attractiveness of a similar product. *Id.* Any further delay in the release of
21 RealDVD will pose an unacceptable business risk to Real, as Real could lose its first
22 mover advantage which could never be recovered.

# CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Plaintiffs' *ex parte* application be denied.

Dated: September 30, 2008

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/Colleen Bal
Colleen Bal
cbal@wsgr.com

Attorneys for Defendants
REALNETWORKS, INC. AND
REALNETWORKS HOME
ENTERTAINMENT, INC.