GLENN D. POMERANTZ (SBN 112503)
*Glenn.Pomerantz@mto.com*
BART H. WILLIAMS (SBN 134009)
*Bart.Williams@mto.com*
KELLY M. KLAUS (SBN 161091)
*Kelly.Klaus@mto.com*
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Tel: (213) 683-9100; Fax: (213) 687-3702

ROBERT H. ROTSTEIN (SBN 72452)
*rxr@msk.com*
ERIC J. GERMAN (SBN 224557)
*ejg@msk.com*
BETSY A. ZEDEK (SBN 241653)
*baz@msk.com*
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Tel: (310) 312-2000; Fax: (310) 312-3100

GREGORY P. GOECKNER (SBN 103693)
gregory_goeckner@mpaa.org
DANIEL E. ROBBINS (SBN 156934)
dan_robbins@mpaa.org
15301 Ventura Boulevard, Building E
Sherman Oaks, California 91403-3102
Tel: (818) 995-6600; Fax: (818) 285-4403

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP, UNIVERSAL CITY STUDIOS LLLP, PARAMOUNT PICTURES CORPORATION, TWENTIETH CENTURY FOX FILM CORPORATION, SONY PICTURES TELEVISION INC., COLUMBIA PICTURES INDUSTRIES, INC., SONY PICTURES ENTERTAINMENT INC., DISNEY ENTERPRISES, INC., WALT DISNEY PICTURES and WARNER BROS. ENTERTAINMENT INC., <br><br> Plaintiffs, | CASE NO. CV 08-06412 SJO AJWx <br><br> PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR TRO |

| | |
|---|---|
| vs.<br><br>REALNETWORKS, INC. and<br>REALNETWORKS HOME<br>ENTERTAINMENT, INC.,<br><br>Defendants. | |

1   Plaintiffs submit this reply brief to correct misstatements of fact and law in
2   Real's opposition papers.
3   **<u>Timing of TRO Request:</u>** In the introductory paragraph of its opposition
4   brief, Real asserts that Plaintiffs knew "since the first week of September" that
5   RealDVD would be launched on September 30. Opp. at. 1. Based on that
6   statement, Real suggests throughout their papers that the Plaintiffs held off filing a
7   request for a TRO for tactical reasons. Real knows the facts are otherwise.
8   Here's what really happened: Real and Plaintiffs entered into a standstill
9   agreement on September 6, to facilitate settlement discussions. In that agreement,
10  the parties expressly agreed that neither party would argue "that any delay in
11  asserting any claim during the [t]olling period is germane" to any issue in any
12  litigation. Real's suggestion in its papers that Plaintiffs delayed in seeking the TRO
13  runs afoul of this commitment.[1]
14  The truth is that Plaintiffs have acted promptly and in the utmost good faith.
15  The parties tried for two weeks to resolve their dispute without Court intervention.
16  On September 22, Real terminated the standstill agreement, which under the terms
17  of the agreement meant that the parties were free to file a lawsuit on Tuesday,
18  September 30. Three days after the September 22 termination notice, Plaintiffs
19  asked Real to delay its launch by a few weeks to allow for expeditious and orderly
20  briefing and consideration of Plaintiffs' request for immediate injunctive relief.
21  Pomerantz Decl. Ex. A. Real refused to do so, and also refused to provide details
22  on the ease with which it can disable the RealDVD software from its servers once
23  the software has been distributed (a fact it still fails to disclose in its opposition
24  papers). Plaintiffs also informed Real last week that they would file their lawsuit
25  Tuesday morning in this Court, and then worked around the clock to draft TRO

---

[1] The parties also agreed that the standstill agreement was confidential (which is why Plaintiffs did not mention it in their opening papers), but could be disclosed to enforce its terms. If the Court would like to review a copy of the standstill agreement, Plaintiffs will file it promptly under seal.

PLAINTIFFS' REPLY BRIEF

papers, which were finalized in the early morning hours of Tuesday, September 30, and provided to Real's counsel as soon as they were completed, even before they were filed.

**Venue:** Footnote 2 of Plaintiffs' opening papers explains why Real's anticipatory declaratory action brought in the Northern District (which it brought only after Plaintiffs told Real it would be filing in Los Angeles) is an improper attempt to forum-shop. *See also Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1192-93 (C.D. Cal. 2006) ("Anticipatory suits . . . are viewed with disfavor as examples of forum shopping and gamesmanship."). Also, Real's opposition never explains why venue of its *contract* claim against the DVD CCA matters to this TRO request, which is based *solely* on a *DMCA* claim by Plaintiffs against Real, over which venue is clearly proper in this district. And even as to the contract claim, Real's opposition overlooks the dispositive venue provision in the CSS license. Real itself has signed a license agreement that expressly provides that Plaintiffs, as third-party beneficiaries of the CSS license, can file an action in Los Angeles to enforce the terms of the license. Pomerantz Decl. Ex. F at 23-25 (§ 9.5). That is precisely what Plaintiffs have done in their second cause of action.[2]

**Likelihood of Success on Merits:** Real does not seriously dispute that RealDVD evades the technological protections of CSS. It artfully says that "RealDVD does not strip or remove the CSS *encryption* from the" copy it creates. Opp. at 4 n.2 (emphasis added). But Plaintiffs have demonstrated that RealDVD avoids and bypasses all the *other* technological protections—e.g., drive locking, authentication, bus encryption, the secure lead in area—that CSS provides and that RealDVD circumvents CSS's core copy protection function. *See* Pls' Memo. at 13-14. Neither Real nor its declarants deny that.

---

[2] Indeed, Plaintiffs have filed 10 other CSS lawsuits against other CSS licenses in Los Angeles under the third-party beneficiary venue provisions of the CSS license, and not one of those licensees claimed that venue was improper or that the DVD CCA was a necessary party.

1     Real's central argument is that it is not circumventing CSS because it "complies with the requirements" of the CSS License Agreement, and "if CSS were supposed to prevent copying by a licensed user, the CSS Agreement would *prohibit such conduct*." Opp. at 2-3 (emphasis added). Real does not dispute, however, that under federal law the question is not whether the license *prohibits* the conduct, but rather whether it affirmatively *authorizes* it. *See* Pls' Memo. at 16-19 (citing *S.O.S. Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989); *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156-57 (9th Cir. 2006)). Real points to no language in the license that *affirmatively authorizes* a CSS licensee to enable consumers to freely make permanent, playable copies of DVDs. And for good reason, because that is contrary to the entire purpose of CSS—developed by the *Copy Protection* Technical Working Group and managed by the DVD *Copy Control* Association. All the language regarding copying in the license is designed to prohibit consumer copying. *See* Pls' Memo. at 18 (quoting Pomerantz Decl. Ex. F at 1 (Recital A), 22 (§ 9.2)); *see also id.* at 4 (quoting Pomerantz Decl. Ex. G).

    Real's Buzzard Declaration only confirms this. He admits RealDVD is a "licensed and authorized *DVD player*." Buzzard Decl. ¶ 5 (emphasis added). He does not suggest that Real has been licensed to distribute a DVD *copier*. As he admits, once "access has been properly granted" under the playback license, RealDVD uses that access to "make a backup copy of the content." *Id.* ¶ 9. Because RealDVD exceeds the scope of its license, Real is using the CSS keys for a prohibited purpose and, under well-settled law, is liable under the DMCA. *See* Pls' Memo. at 15 (citing *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1098 (N.D. Cal. 2004); *Microsoft Corp. v. EEE Business Inc.*, 555 F. Supp. 2d 1051, 1059 (N.D. Cal. 2008)).

    **Irreparable Injury:** The thrust of Real's argument on irreparable injury is that Plaintiffs will suffer no harm because *illegal* DVD ripping software has been available for years, and already costs the Plaintiffs dearly. The argument misses the

point entirely. RealDVD is the *first* such branded product from a recognized company that holds itself out as "legal." As Real frankly concedes, it is "targeted precisely to those users who have avoided rippers[.]" Opp. at 6. That is exactly the concern expressed by Mr. Dunn in his declaration: that the broad sweep of *law-abiding* consumers will now be likely to start copying DVDs, causing Plaintiffs irreparable injury above and beyond that caused by illegal rippers. Dunn. Decl. ¶¶ 5, 27-28. Real simply does not address that serious threat. Real's "two wrongs make a right" argument should be rejected.

The only supposed "evidence" submitted by Real regarding irreparable injury is a declaration by Gordon Klein, a lawyer and accountant. There is nothing apparent in Mr. Klein's background that even *might* permit him to opine authoritatively or reliably about the marketplace for home video products or services, or the effect of RealDVD on that marketplace. His declaration does not set forth any relevant work or academic experience that would qualify him as an expert in any area relating to the market for entertainment products or, specifically, home entertainment products. Nor does he indicate that he has previously qualified as an expert in the area.

In any event, in opining that damages are likely to be quantifiable, Mr. Klein simply points to the fact that there are *some numbers* in Mr. Dunn's declaration, and completely ignores the specific factors that Mr. Dunn points to in explaining why economic damages would be extraordinarily difficult to measure in this specific market, which he knows well after twenty-one years. He also does not even purport to address Mr. Dunn's testimony about the irreparability of harm to nascent markets, or harm flowing from changes in consumer attitudes and behavior. The numerous cases cited on page 22 of Plaintiffs' opening brief make clear that this is precisely the type of harm that warrants immediate injunctive relief.

**Balance of Hardship:** The only evidence of harm that Real even purports to offer is the Lang Declaration. Ms. Lang, however, points to supposed harm that

1 flowed from the decision to delay the launch of RealDVD past September 8. To
2 her credit, Ms. Lang acknowledges that the decision was *Real's*. Lang Decl. ¶ 3.
3 This hardship, however, has nothing to do with the granting or denying of
4 injunctive relief; it is something Real voluntarily chose to do. The only issue now
5 is what harm, if any, Real will suffer if the launch is pushed back by a few more
6 weeks to allow for consideration of the merits of a preliminary injunction motion.
7 As to that issue, Ms. Lang's declaration offers very little.

Ms. Lang says that Real tried to re-interest the press in advance of the September 30 re-launch, but candidly admits that many publications "were not willing to run second articles." *Id.*, ¶ 7. Although she alludes to some unspecified "advertising efforts" around the September 30 re-launch, she does not quantify or detail any.

Ms. Lang also insists that Real will suffer hardship because it will lose its "first mover advantage." The law is clear, however, that a party is not entitled to any advantage as a result of being the "first mover" in the market for an unlawful product or service.[3]

Perhaps most important, Real's opposition papers do nothing to respond to the risk of irreparable harm that the Plaintiffs explained in detail in the declaration of Mr. Dunn and that other courts have found exists when they have addressed similar situations. *See* Pls' Memo. at 22. The balance of hardships clearly tilts in favor of issuance of a temporary restraining order.

---

[3] *See, e.g., Power-One, Inc. v. Artesyn Techs., Inc.*, 2008 WL 1746636, *1, n.1 (E.D. Tex. 2008); *Warrior Sports, Inc. v. STX, L.L.C.*, 2008 WL 783768, *12 (E.D. Mich. 2008); *Tivo, Inc. v. Echostar Communications Corp.*, 446 F. Supp. 2d 664, 669-670 (E.D.Tex. 2006); *Lyrick Studios, Inc. v. Big Idea Prods., Inc.*, 2002 WL 32157203, *1 (N.D. Tex. 2002).

| | | |
|---|---|---|
| 1 | DATED: October 1, 2008 | MUNGER, TOLLES & OLSON LLP |
| 2 | | MITCHELL SILBERBERG & KNUPP LLP |
| 3 | | |
| 4 | | GREGORY P. GOECKNER<br>DANIEL E. ROBBINS |
| 5 | | |
| 6 | | By: /s/ |
| 7 | | GLENN D. POMERANTZ |
| 8 | | Attorneys for Plaintiffs |